```
1  MCGREGOR W. SCOTT
   United States Attorney
2  KEVIN C. KHASIGIAN
   Assistant United States Attorneys
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2772

5  Attorneys for Plaintiff
   United States of America
6
```



FILED
OCT 11 2019
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ZACHERY JOSEPH BASTIEN, AND ALYSSA NAKAMURA PRICE, <br><br> Defendants. | CASE NO. 2:16-CR-216 GEB <br><br> PLEA AGREEMENT: RE: DEFENDANT ZACHERY JOSEPH BASTIEN <br><br> DATE: October 11, 2019 <br> TIME: 9:00 a.m. <br> COURT: Hon. Garland E. Burrell, Jr. |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JENIVIVE SAHRA JANE MCINTYRE, AKA JENVIVE MCINTYRE, AND ZACHERY JOSEPH BASTIEN, <br><br> Defendants. | CASE NO. 2:16-CR-224 GEB <br><br> PLEA AGREEMENT: RE: DEFENDANT ZACHERY JOSEPH BASTIEN <br><br> DATE: October 11, 2019 <br> TIME: 9:00 a.m. <br> COURT: Hon. Garland E. Burrell, Jr. |

1

PLEA AGREEMENT RE:
ZACHERY BASTIEN

|   |   |   |
|---|---|---|
| 1 | UNITED STATES OF AMERICA, | CASE NO. 2:16-CR-225 GEB |
| 2 | Plaintiff, | PLEA AGREEMENT: RE: DEFENDANT ZACHERY JOSEPH BASTIEN |
| 3 | v. | |
| 4 | JOHANNA LEEANN MCGILLIVRAY, AND ZACHERY JOSEPH BASTIEN, | DATE: October 11, 2019<br>TIME: 9:00 a.m.<br>COURT: Hon. Garland E. Burrell, Jr. |
| 5 | | |
| 6 | Defendants. | |
| 7 | | |
| 8 | UNITED STATES OF AMERICA, | CASE NO. 2:16-CR-235 GEB |
| 9 | Plaintiff, | PLEA AGREEMENT: RE: DEFENDANT ZACHERY JOSEPH BASTIEN |
| 10 | v. | |
| 11 | ZACHERY JOSEPH BASTIEN, | DATE: October 11, 2019<br>TIME: 9:00 a.m.<br>COURT: Hon. Garland E. Burrell, Jr. |
| 12 | Defendant. | |

## I. INTRODUCTION

### A. The Four Related Indictments Against Defendant Zachery Joseph Bastien

Defendant Zachery Joseph Bastien is charged by Indictment or Superseding Indictment in four separate cases in the Eastern District of California. Each relevant Indictment includes two counts: first, a conspiracy to structure monetary transactions in violation of 18 U.S.C. § 371; and, second, structuring monetary transactions in violation of 31 U.S.C. § 5324(a)(3). In each case, defendant Bastien is charged with a different co-defendant, as set forth below:

- Case No. 2:16-CR-216 GEB, United States v Zachery Bastien and Alyssa Nakamura Price.
- Case No. 2:16-CR-224 GEB, United States v Zachery Bastien and Jenivive Sahra McIntyre.
- Case No. 2:16-CR-225 GEB, United States v Zachery Bastien and Johanna Leeann McGillivray.
- Case No. 2:16-CR-235 GEB, United States v Zachery Bastien and unknown co-

1 | conspirators.

2 | This document contains the complete Plea Agreement between the United States Attorney's
3 | Office for the Eastern District of California ("the United States") and defendant regarding these four
4 | cases. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of
5 | California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory
6 | authorities.

### B. Court Not a Party

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in the four relevant Indictments. The Court is under no obligation to accept any recommendations made by the United States, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this Plea Agreement.

If the Court should impose any sentence up to the maximum established by the statute, defendant cannot, for that reason alone, withdraw any guilty plea, and he will remain bound to fulfill all of the obligations under this Plea Agreement. Defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentences he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

Defendant shall plead guilty to Count One of the each of the Indictments or Superseding Indictments for violating 18 U.S.C. § 371 – conspiracy to structure monetary transactions. Defendant agrees and stipulates that he is in fact guilty of these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are true and accurate. Defendant further agrees and stipulates that he committed the additional crimes of structuring monetary transactions as charged in Count Two of each Indictment or Superseding Indictment and described in Exhibit A, and that in calculating defendant's sentences the Court should treat defendant as if he had been convicted of these additional offenses within the meaning of U.S.S.G. § 1B1.2(c).

Defendant agrees that this Plea Agreement will be filed with the Court and become a part of the

3

record of the case. Defendant understands and agrees that he will not be allowed to withdraw his guilty plea in the event the Court does not follow the United States' sentencing recommendations.

Defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against defendant by the United States in any subsequent criminal or civil proceedings, even if defendant fails to enter any guilty plea pursuant to this Agreement. Defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Fine.

The defendant agrees to pay any fine the Court imposes. If the Court imposes a fine, the defendant agrees to pay such fine if and as ordered by the Court, up to the statutory maximum fine for the defendant's offenses.

### C. Special Assessment

Defendant agrees to pay special assessments of $100 for each of his four convictions, totaling $400, at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. Defendant understands that this Plea Agreement is voidable at the option of the United States if he fails to pay the special assessments prior to that hearing. If defendant is unable to pay the special assessments at the time of sentencing, he agrees to earn the money to pay the special assessments, if necessary, by participating in the Inmate Financial Responsibility Program.

### D. Agreement to Cooperate

Defendant agrees to cooperate fully with the United States and any other federal, state, or local law enforcement agency, as directed by the United States. As used in this Plea Agreement, "cooperation" requires defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which defendant's presence is requested by the United States or compelled by subpoena or court order; (3) to

4

PLEA AGREEMENT RE:
ZACHERY BASTIEN

produce voluntarily any and all documents, records, or other tangible evidence requested by the United States; (4) not to participate in any criminal activity while cooperating with the United States; (5) to disclose to the United States the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, defendant's illegal activities or the illegal activities of any conspirators; and (6) to agree to continue the date of his sentencing to any date requested by the United States, even if the United States makes multiple requests to continue his sentencing.

### E. The Defendant's Violation of Plea Agreement or Withdrawal of Guilty Plea

If defendant, violates this Plea Agreement in any way, withdraws any guilty plea, or tries to withdraw his guilty plea, this Plea Agreement is voidable at the option of the United States. The United States will no longer be bound by its representations to defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the Plea Agreement is to commit any crime, or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether defendant has violated the Plea Agreement shall be decided under a probable cause standard.

If defendant violates the Plea Agreement, withdraws his guilty plea, or tries to withdraw his guilty plea, the United States shall have the right: (1) to prosecute defendant on any of the count to which he pleaded guilty; and (2) to file any new charges that would otherwise be barred by this Plea Agreement. Defendant shall thereafter be subject to prosecution for any federal criminal violation of which the United States has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this Plea Agreement, defendant agrees to waive any objections, motions, and defenses that defendant might have to the United States' decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement

5

and the commencement of any such prosecutions. Defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of the filing of the original Indictment.

In addition: (1) all statements made by defendant to the United States or other designated law enforcement agents, or any testimony given by defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against defendant; and (2) defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by defendant before or after this Plea Agreement, or any leads derived therefrom, should be suppressed. By signing this Plea Agreement, defendant waives any and all rights in the foregoing respects.

### III. THE UNITED STATES' OBLIGATIONS

#### A. Dismissals.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the pending Indictment and/or Superseding Indictments as to this defendant (Count Two in each of the four Indictments/Superseding Indictments). The government also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or as provided in paragraphs II.E (Violation of Plea Agreement by Defendant/Withdrawal of Plea(s)), VI.B (Stipulations and Estimates Concerning Guideline Calculation), and VII.B (Waiver of Appeal and Collateral Attack) herein.

#### B. Recommendations

##### 1. Incarceration Range

The United States will recommend that defendant be sentenced to the low end of the applicable guideline range for each offense of conviction unless the United States determines that defendant has: (1) earned a U.S.S.G. § 5K1.1 motion for a downward departure; or (2) engaged in conduct constituting

6

PLEA AGREEMENT RE:
ZACHERY BASTIEN

obstruction of justice and/or conduct in violation of this Plea Agreement in which case the United States may seek an upward enhancement, departure, and/or variance.

### 2. Acceptance of Responsibility

The United States will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in new crimes and/or engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing process or proceeding.

### 3. Reduction of Sentence for Cooperation

The United States agrees to consider recommending at the time of sentencing that defendant's sentence of imprisonment be reduced based upon the nature, value, and level of assistance the United States determines that defendant has provided, pursuant to U.S.S.G. § 5K1.1. Defendant understands that he must comply with paragraph II.C. (Agreement to Cooperate) and not violate this Plea Agreement, as set forth in paragraph II.D. (The Defendant's Violation of Plea Agreement and Withdrawal of Guilty Plea) herein. Defendant understands that it is within the sole and exclusive discretion of the United States to determine whether defendant has provided substantial assistance.

Defendant understands that the United States may or may not recommend a reduction in his sentence depending upon the nature, value, and level of assistance the United States determines that defendant has provided.

Defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this Plea Agreement confers no right upon defendant to require that the United States make a § 5K1.1 motion, and that this Plea Agreement confers no remedy upon defendant in the event that the United States declines to make a § 5K1.1 motion. In particular, defendant agrees not to file a motion to withdraw any guilty plea based on the fact that the United States decides not to recommend a sentence reduction or recommends a sentence reduction less

7

PLEA AGREEMENT RE:
ZACHERY BASTIEN

than defendant thinks is appropriate.

If the United States determines that defendant has provided further cooperation within one year following his sentencing, the United States may, in its sole discretion, move for a further reduction of his sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

### C. Use of Information for Sentencing

The United States is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by defendant, his attorney, Probation, or the Court. Defendant also understands and agrees that nothing in this Plea Agreement bars the United States from defending on appeal or collateral review any sentence that the Court may impose.

Further, other than as set forth above, the United States agrees that any incriminating information provided by defendant during his post-conviction cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8, unless the information is used to respond to representations made to the Court by defendant, or on his behalf, that contradicts information provided by defendant during his cooperation.

### IV. ELEMENTS OF THE OFFENSE

A. **Conspiracy To Structure Monetary Transactions.** In each of the four relevant Indictments described above, defendant is charged with violating 18 U.S.C. § 371, conspiracy to structure monetary transactions. In order for defendant to be found guilty of that charge, the United States must prove each of the following elements beyond a reasonable doubt:

First, beginning not later than on or about September 2011, and continuing through on or about June 2012, as charged in each relevant Indictment, in the State and Eastern District of California; in the State and District of Maryland; in the other places described in each relevant Indictment, and elsewhere, there was an agreement between two or more persons to commit structuring monetary transactions for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), and the regulations promulgated thereunder, in violation of 31 U.S.C. § 5324(a)(3);

Second, defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

PLEA AGREEMENT RE:
ZACHERY BASTIEN

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. The United States is not required to prove that defendant personally did one of the overt acts.

The defendant fully understands the nature and elements of the crimes charged in each Indictment and/or Superseding Indictments to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum penalty

As charged in Count One of each of the four relevant Indictments, conspiracy to structure monetary transactions, in violation of 18 U.S.C. § 371 is a Class D felony. The maximum sentence that the Court can impose for each conspiracy conviction is 5 years imprisonment, 3 years supervised release, a fine of $250,000, and a special assessment of $100, pursuant to 18 U.S.C. § 3013. The Court in its discretion may run each sentence of imprisonment consecutively for a total imprisonment of 20 years, and add together the maximum fines for each of defendant's four convictions for a total of $1,000,000 in fines. The $100 special assessments on each of defendant's four convictions are mandatory and total $400.

### B. Violations of Supervised Release

Defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require defendant to serve up to 2 years of additional imprisonment, pursuant to 18 U.S.C. § 3583(e).

## VI. SENTENCING DETERMINATION

### A. Statutory Authority

Defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for these cases pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. Defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for these cases pursuant to the Sentencing Guidelines. Defendant further understands that the Court will

9

PLEA AGREEMENT RE:
ZACHERY BASTIEN

consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. Defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B. Agreed Guideline Calculations

The United States and defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

| | | |
|---|---|---|
| Base offense level: | +6 for monetary structuring per U.S.S.G. § 2S1.3(a)(2). | |
| Enhancements | +2 as defendant knew money structured came from unlawful activity per U.S.S.G. § 2S1.3(b)(1). | |
| | +14 as defendant structured more than $550,000 per U.S.S.G. § 2B1.1(b)(1)(H). | |
| | +2 for a Title 31, Chapter 53 offense and pattern of unlawful activity involving more than $100,000 in a 12-month period per U.S.S.G. § 2S1.3(b)(2)(B). | |
| | +4 (§ 3B1.1(a)) for defendant's leadership and/or organizer role in the offenses of conviction which involved 5 or more participants. | |
| Deductions | -3 possible, if defendant qualifies for acceptance of responsibility within the meaning of U.S.S.G. § 3E1.1. | |

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the United States may move for a departure or adjustment based on defendant's post-plea obstruction of justice (U.S.S.G. §3C1.1) or defendant's cooperation (U.S.S.G. § 5K1.1). Defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The United States is not obligated to recommend any specific sentence if it makes a U.S.S.G. § 5K1.1 motion.

10

## VII. WAIVERS

### A. Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack

Defendant understands that the law gives defendant a right to appeal any guilty plea, conviction, and sentence. Defendant agrees as part of his guilty plea, however, to give up the right to appeal any guilty plea, conviction, and sentence imposed in these cases, except as provided below. Defendant specifically gives up the right to appeal any order of restitution the Court may impose. Notwithstanding defendant's waiver of appeal, defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the United States appeals the sentence in the case. Defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence defendant receives, defendant also gives up any right to bring a collateral attack, including, without limitation, a motion under 28 U.S.C. § 2255 or § 2241, writ of habeas corpus, and/or writ of coram nobis, challenging any aspect of any guilty plea, conviction, or sentence, except for non-waivable claims.

Defendant understands and agrees that as a result of the waiver of his rights in this section, he will be forever barred from requesting that any court – higher, lower, or at the same level of the district court – review any conviction and/or sentence in these cases at any future time and he may not pursue any future litigation after judgment and sentencing in these cases.

Notwithstanding anything in the Plea Agreement to the contrary, if defendant ever attempts to vacate any guilty plea, dismiss the underlying charge, or modify or set aside any sentence on the count to which he is pleading guilty, the United States shall have the rights set forth in paragraph II.D. (The

11

Defendant's Violation of Plea Agreement or Withdrawal of Guilty Plea) herein.

### C. Waiver of Attorneys' Fees and Costs

Defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations.

### D. Impact of Plea on The Defendant's Immigration Status

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to the four conspiracy counts removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## VIII. ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the United States and defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by defendant, counsel for defendant, and counsel for the United States, or entered into on the Court's record.

## IX. APPROVALS AND SIGNATURES

**A.** **Defense Counsel:** I am defendant's attorney. I represent that my client has received a copy of each of the four relevant Indictments and this Plea Agreement. I fully explained, and my client has acknowledged to me understanding, each of these documents, and his rights, including those rights contained in Federal Rule of Crim. Procedure 11(b)(1)(A)-(O). I have fully discussed with my client, and answered his questions regarding the provisions of the Sentencing Guidelines which may apply to defendant's case. To my knowledge, his decision to enter into this Plea Agreement is an informed and voluntary one. The Plea Agreement accurately and completely sets forth the entirety of the agreement.

12

1 | I concur in my client's decision to plead guilty to the four conspiracy counts as set forth in this Plea
2 | Agreement. Based on my dealings with defendant, I believe he is mentally competent to enter into this
3 | Plea Agreement.

DATED: October 11, 2019

*Todd Leras* (signature)
TODD LERAS
Attorney for defendant
Zachery Joseph Bastien

**B.     Defendant:** I have read this plea agreement and carefully reviewed every part of it, including Exhibit A, with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

DATED: 10/11, 2019

(signature)
ZACHERY JOSEPH BASTIEN
Defendant

**C.     Attorney for United States:** I accept and agree to this Plea Agreement on behalf of the United States.

DATED: 10/11, 2019

MCGREGOR W. SCOTT
United States Attorney

By: (signature)
KEVIN C. KHASIGIAN
Assistant United States Attorneys

PLEA AGREEMENT RE:
ZACHERY BASTIEN

# EXHIBIT "A"
## Factual Basis for Plea

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

The factual basis for each separately charged case is set forth below under the appropriate heading, but applicable to each case is the following:

- Cooperator No. 1 assisted Bastien in the packaging and shipping of marijuana on repeated multiple occasions. According to Cooperator No. 1, during the time period charged in the Indictments discussed below, Bastien sold and shipped on a regular basis via overnight delivery multiple pound quantities of marijuana from the Sacramento area to one of his customers in Baltimore, Maryland, and elsewhere.

- Bank of America, N.A. and Citibank, N.A. are domestic financial institutions as defined in the relevant statutes.

### A. Case No. 2:16-CR-216 GEB (Bastien and Price)

In or about 2011, within the State and Eastern District of California, defendant Zachery Joseph Bastien caused and financially compensated his co-defendant Alyssa Price to open account ending in *6186 at Bank of America, N.A. ("Account *6186") and account ending in *4136 at Citibank, N.A. ("Account *4136"). The Bank of America account was jointly held by Bastien and Price. The Citibank account was held in Price's name alone.

Records from Bank of America and Citibank establish each of the deposits and withdrawals, all under the amount of $10,000 and were made on or about the dates indicated in the imbedded charts set forth in the Superseding Indictment. Between on or about September 17, 2011 and December 17, 2011, Bastien's out-of-state marijuana customer ("MJ Customer") made 28 deposits totaling $165,100 in Account *6186 and 12 deposits totaling $71,350 into Account *4136. Those deposits took place in Maryland, Georgia and Illinois. Either on the same day or shortly after the deposits were made, either Bastien or Price at Bastien's direction, in the Eastern District of California, withdrew money in amounts under $10,000 and closely approximating the deposit amounts (as set forth in the imbedded charts in the Indictment). Bastien's purpose for these deposits and withdrawals, all in amounts less than $10,000, was to evade each bank's cash transaction reporting requirements under applicable federal law, 31 U.S.C. § 5313(a), and the regulations promulgated thereunder.

Defendant acknowledges that these deposits and withdrawals were part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

Defendant agrees that the deposits and withdrawals into the above bank accounts are accurately set forth in the Superseding Indictment, 2:16-CR-216 GEB, Dkt. 13, at pgs. 2-4.

### B. Case No. 2:16-CR-224 GEB (Bastien and McIntyre)

In or about 2011, in the State and Eastern District of California, defendant Zachery Joseph Bastien caused and financially compensated his co-defendant Jenivive Sahra McIntyre to open account ending in *8944 at Bank of America, N.A. ("Account *8944") and account ending in *6974 at Citibank, N.A. ("Account *6974"). Both the Bank of America account and the Citibank account were held in McIntyre's name alone.

Records from Bank of America and Citibank establish each of the deposits and withdrawals, all under the amount of $10,000 and were made on or about the dates indicated in the imbedded charts set

1

forth in the Superseding Indictment. Between on or about October 24, 2011 and February 21, 2012, Bastien's out-of- state marijuana customer (referred to as "MJ customer") made 28 deposits totaling $148,500 in the Account *8944 and 2 deposits totaling $11,000 into Account *6974 in Maryland and Georgia. Either on the same day or shortly after the deposits were made, McIntyre, at Bastien's direction, would withdraw, in the Eastern District of California, amounts all under $10,000 and closely approximating the amounts of the deposits (as set forth in the imbedded charts in the Indictment). Bastien's purpose for these deposits and withdrawals, all in amounts less than $10,000, was to evade each bank's cash transaction reporting requirements under applicable federal law, 31 U.S.C. § 5313(a), and the regulations promulgated thereunder.

Defendant acknowledges that these deposits and withdrawals were part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

Defendant agrees that deposits and withdrawals into the above bank accounts are accurately set forth in the Superseding Indictment, 2:16-CR-224 GEB, Dkt. 5, at pgs. 2-4.

### C. Case No. 2:16-CR-225 GEB (Bastien and McGillivray)

In or about 2011, in the State and Eastern District of California, defendant Zachery Joseph Bastien caused and financially compensated his co-defendant Johanna Leeann McGillivray ("McGillivray") to open joint account ending in *3865 with him at Citibank ("Account *3865") and an individual account account ending in *9647 in McGillivray's name at Bank of America ("Account *9647").

Records from Bank of America and Citibank establish each of the deposits and withdrawals, all under the amount of $10,000 and made on or about the dates indicated in the imbedded charts set forth in the Superseding Indictment. Between on or about September 30, 2011, and February 16, 2012, Bastien's out-of- state marijuana customer (referred to as "MJ customer") made 15 deposits totaling $107,192 into Account *3865 and 19 deposits totaling $104,450 into Account *9647. Bastien and/or McGillivray withdrew $100,350 in 17 transactions from Account *3865, and McGillivray withdrew $104,038 in 16 transactions from Account *9647 at Bastien's direction. All of the deposits and withdrawals were in amounts less than $10,000 and closely approximated the amounts of the deposits. All of the withdrawals were made in the Eastern District of California. Bastien's purpose for these deposits and withdrawals, all in amounts less than $10,000, was to evade each bank's cash transaction reporting requirements under applicable federal law, 31 U.S.C. § 5313(a), and the regulations promulgated thereunder.

Defendant acknowledges that these deposits and withdrawals were part of a pattern of illegal activity involving more than $100,000 in a 12-month period.

Defendant agrees that the deposits and withdrawals into the above bank accounts are accurately set forth in the Superseding Indictment, 2:16-CR-225 GEB, Dkt. 5, at pgs. 2-4.

### D. Case No. 2:16-CR-235 GEB (Bastien Only)

As part of his monetary structuring efforts to avoid detection of his criminal activities, Bastien opened individual bank account ending in *8721 in his name at Bank of America ("Account *8721"). Records from the Bank of America establish each of the deposits and withdrawals, all under the amount of $10,000 and made on or about the dates indicated in the imbedded charts set forth in the Superseding Indictment.

Between on or about January 5, 2012, and June 13, 2012, MJ Customer caused or made 24 deposits in amounts all under $10,000 and totaling $122,950 into Account *8721. There were 6 deposits made in California totaling $7,500. Either on the same day or shortly after the deposits were made, in the Eastern District of California, Bastien made 25 withdrawals in amounts all under $10,000 and

2

totaling $91,610 from his account. Bastien's personal banking transactions as charged in this Indictment are consistent with the monetary structuring banking transactions described above in Case Nos. 2:16-CR-216, 2:16-CR-224, and 2:16-CR-225, in which Bastien recruited and used Alyssa Nakamura Price, Jenivive Sahra McIntyre, and Johanna Leeann McGillivray to structure monetary transactions in amounts less than $10,000 to receive cash payments for the marijuana that he sold and shipped to MJ Customer. In addition, Bastien structured these monetary transactions for Bastien's specific purpose of evading the cash transaction reporting requirements placed on his bank (a domestic financial institution) under applicable federal law, specifically, 31 U.S.C. § 5313(a), and the regulations promulgated thereunder.

Defendant agrees that the deposits and withdrawals into the above bank account are accurately set forth in the Indictment, 2:16-CR-235 GEB, Dkt. 1, at pgs. 2-3.

As part of this Plea Agreement, Zachery Joseph Bastien stipulates and agrees that:

1. Beginning not later than on or about the starting date of the conspiracy, and continuing through on or about the ending date of the conspiracy, as charged in each of the four Indictments or Superseding Indictments, in the State and Eastern District of California; in the other places described in each Indictment, and elsewhere, there was an agreement between two or more persons to commit at least one crime, to wit: structuring monetary transactions for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), and the regulations promulgated thereunder, in violation of 31 U.S.C. § 5324(a)(3);

2. He became a member of the conspiracy knowing of its object, to wit: structure monetary transactions as part of a pattern of illegal activity involving more than over $100,000 within a 12-month period, and intended to help accomplish the conspiracy's object;

3. He and/or one or more other the members of the conspiracy performed multiple overt acts for the purpose of carrying out the conspiracy, specifically, the banking monetary transactions alleged in Count Two of the each of the four Indictments and listed in the factual basis here.

4. He knew of the legal obligation of each bank, which are domestic financial institutions, to report currency transactions in excess of $10,000 to the Secretary of the Treasury;

5. His purpose for the structured currency transactions was to cause each bank to evade that reporting obligation; and.

6. He was not tricked, coerced, threatened, placed under duress, or forced to participate in the crimes charged in these cases.

**AFFIRMATION BY DEFENDANT**

I have read and understand fully the contents of this "EXHIBIT A, Factual Basis for Plea" and discussed it with my attorney. I voluntarily agree that these facts are true and correct, and shall serve as the factual basis for my guilty pleas.

DATED: 10/11, 2019

ZACHERY JOSEPH BASTIEN
Defendant

3

PLEA AGREEMENT RE:
ZACHERY BASTIEN